29088. METROPOLITAN LIFE INSURANCE COMPANY *v.* APPLEWHITE.

DECIDED DECEMBER 3, 1941.

*Jones, Jones & Sparks,* for plaintiff in error.
*Alexander & Jones, Steve M. Watkins,* contra.

BROYLES, C. J. Mrs. C. L. Applewhite sued the Metropolitan Life Insurance Company on two policies of life insurance. Her amended petition contained the following allegations: In 1937 and 1938 the defendant issued two policies insuring the life of her son, William H. Applewhite, for $510 and $495 respectively. The beneficiary designated in the policies was Lucile Applewhite, the wife of the insured. In each policy the right to change the beneficiary was reserved, subject to the following provision in the policy: "No designation of a beneficiary shall be binding on the company unless endorsed on this policy by the company." Each

policy contained the further provision: "Any assignment or pledge of this policy or of any of its benefits shall be void." On November 30, 1939, about three months before his death, the insured executed a written instrument, referred to in the petition as a "change of beneficiary" and also as an "assignment." The instrument was sent to the defendant, with a letter signed by Steve M. Watkins, the attorney for the insured, and of the same date as that of the execution of the instrument. The instrument stated that the insured desired to change the beneficiary of the policies from his wife to his mother, Mrs. C. L. Applewhite, and recited certain valuable considerations for such a change. The instrument also contained the following statements: "The policies are away from my control and can not be returned to you with this order for transfer and I hereby make application for copies, or the correct making of policies, in lieu of the present policies, with the beneficiary named above to be in said policies. . . This order has been prepared after my attorney, Steve M. Watkins, tells me that he requested your Thomasville agent, Mr. Rutland, to give him your official transfer of beneficiary blanks, and after Mr. Watkins explained that your agent said that he would furnish him with transfer blanks only after I had made written request to him, witnessed by a notary public, and, even after the request be made, that a change would not be made except that I send the policies together with the transfer. I am sick in bed and am satisfied that I could not recover the policies from my wife from whom I am separated, except by some legal procedure and then they might not be found, and my reason for making this order to you is that in all events the beneficiary will be my mother who is the one that I want to be the beneficiary and so named as now."

The letter written by Mr. Watkins stated that the instrument had been executed by the insured and was being sent to the company at his request, and that the insured "is sick and is not in condition to take legal procedure in order to recover the policies at this time." On December 8, 1939, the company answered that letter as follows: "This is in response to your letter of November 30, with which you forwarded a purported change of beneficiary proposing the insured's mother as such. Both of these policies provide for beneficiary designations, but we will be in a position to record such a designation only if the contracts themselves are

produced. According to the clause 'Beneficiaries' in the contract itself it reads: 'No designation of a beneficiary shall be binding on the company unless endorsed on this policy by the company.' Therefore, all that we could do in this instance is to note the facts on our records as correspondence for whatever future reference they may serve when the time arises. The form purporting the change of this beneficiary is returned herewith." This letter, the only communication from the company, was attached as an exhibit to the petition.

By an amendment the petition alleged that the insured attempted to obtain the policies from his wife but was unable to do so because of his illness and because of his wife's refusal to deliver the policies, all of which difficulty was known to the company through its agent, J. A. Rutland, who had been previously informed of it by the insured, and said information was conveyed to the company by the letter of November 30, 1939. The petition alleged that the insured died on February 29, 1940, and that the plaintiff, on March 7, 1940, made a formal demand in writing on the company for payment due her on the policies, and that said demand was refused. She further alleged that after the demand for payment had been made she, through her attorney, suggested on several occasions to "J. A. Rutland, defendant's agent, that the defendant pay the proceeds into the court and ask for a bill of interpleader to determine the equitable distribution of said proceeds among the parties claiming same." It was also alleged that, regardless of the plaintiff's efforts to recover the proceeds of the policies, the company, with full notice of her rights and equities, did "wilfully and wrongfully" pay such proceeds, on March 19, 1940, to the beneficiary named in the policies. The prayers of the petition were for the issuance of process, for a judgment against the defendant, and for such other relief as may seem to the court meet and proper.

The defendant demurred generally to the petition on the grounds that no cause of action was set out; that it affirmatively appeared from the petition that the document relied upon, if relied upon as an assignment of the policies, was void under the terms of the policies, and that it also appeared that under said terms the document, whether relied upon as a change or a designation of a beneficiary, was not effective to vest any rights in the plaintiff to receive the proceeds of the policies. The demurrer was overruled and that

judgment is assigned as error. The judge, in denying the demurrer, rendered the following opinion: "Upon consideration of the demurrer, after argument of counsel, it is held that the demurrer should be overruled, and it is so ordered for the following reasons by way of authority: 29 Am. Jurisprudence, § 1320, where it is held: 'By the great weight of authority, a change of beneficiary can be accomplished without a strict or complete compliance with the conditions of the policy regarding the indorsement of the insurer. The courts upholding this view usually state the general proposition that a substantial compliance by the insurer [?] with the conditions respecting a change of beneficiary is sufficient. Thus, it has been said that the indorsement of a change of beneficiary by an insurer is a purely ministerial act which the insurer can not refuse to perform; that the requirement of an indorsement is one which the insurer may waive; and accordingly, that a failure on the part of the insurer to indorse the policy will not defeat a change of beneficiary if the insured has done everything reasonably within his power to effect a change.' To the same effect and with more force I cite 14 Ruling Case Law, § 556, entitled 'Equitable Enforcement of Ineffectual Change,' and authorities cited thereunder. The case of *Barrett* v. *Barrett,* 173 *Ga.* 375 (160 S. E. 399), is cited in support of this in 29 Am. Jur., § 1320. The rule laid down in the *Barrett* case, supra, should be extended in equity and good conscience to sustain this ruling."

The *Barrett* case appears to be the leading authority cited by American Jurisprudence in support of the text cited by the trial judge. That case, however, is fundamentally different from this case. There, the insurance company filed its equitable petition for interpleader in which it admitted indebtedness on the policies in question, but stated that conflicting claims had been presented to it for the proceeds of the policies. It offered to pay the proceeds into the court and prayed that the court require the rival claimants to interplead and to make their respective claims to such proceeds. The court granted the prayer, and Mrs. Bertha Barrett filed her claim as the *equitable* beneficiary and assignee of the policies in question. To this petition the wife of the insured, as guardian of her and the insured's children, filed a demurrer. The demurrer was overruled and the judgment was affirmed. It was a case in equity and was decided on equitable principles. The Supreme

Court, after quoting from other equitable cases, said: "In view of these decisions, we think that the equitable principles referred to in them can be applied in this case, and that the rule of substantial compliance should be applied, especially in view of the allegations in the petition which show that Mrs. Bertha Barrett can not be treated as a mere volunteer. There was a good consideration inducing the insured to make this change. Besides this, there are pleaded good reasons why the policy was not forwarded to the company for its endorsement thereon of the change of beneficiary. It was explained on behalf of the insured that the policy was in a safety-deposit box in New York; the insured was sick there and could not get the policy out of the box."

The instant case is not a case in equity, and equitable principles can not be here applied. It is a suit at common law for the recovery of the proceeds of two policies of life insurance. No bill for interpleader was filed. The insurance company was the only defendant, and the beneficiary to whom the proceeds of the policies were paid was not made a party defendant. While it is true that the superior court is, in a broad sense, a court of equity, yet there must be proper pleadings to invoke the application of equitable principles before they can be applied. It is well settled that to secure any right or remedy in equity which does not exist in law, all persons interested in the controversy should be formally brought into court. Of course, the prayer in the instant petition, for "such further relief as the court may deem meet and proper," was insufficient to invoke the equity powers of the court. The learned trial judge realized that the decision in the *Barrett* case, supra, was not controlling in this case, as is shown by his statement that the rule laid down by the Supreme Court in that case "should be extended in equity and good conscience to sustain this ruling [the court's ruling overruling the demurrer to the petition in this case]." Moreover, in the *Barrett* case, the holding of the court that the insured had substantially done all that was required of him in endeavoring to present his insurance policies to the company, should be treated as obiter dictum, since such a holding was unnecessary for the decision of the case. There, the company, by filing its interpleader petition, waived the provision of the policies in respect to the methods necessary to obtain a change in the beneficiary, and the company having waived that provision, *no other person could insist*

*upon a compliance with it. Nally* v. *Nally, 74 Ga.* 669 (58 Am. R. 458). Therefore, irrespective of whether the insured in the *Barrett* case had substantially done all that was required of him, his mother, the purported changed beneficiary, was entitled by the allegations of her equitable petition to be recognized as the changed beneficiary of the policies.

In *Security Mutual Life Insurance Co.* v. *Bankers Trust & Audit Co., 32 Ga. App.* 536 (124 S. E. 53), a suit upon a policy of life insurance by an alleged transferee was dismissed on general demurrer because the petition failed to allege that the transfer was filed with the company, as required by the provisions of the policy, or that such requirement was waived by the company. In *Smith* v. *Locomotive Engineers Insurance Asso., 138 Ga.* 717 (76 S. E. 44), it was held that some affirmative act by the insured to change the beneficiary is required; that his mere intention to make such a change is not sufficient. There the court made the following ruling: "A mutual benefit association may make reasonable regulations defining the methods by which a member may change the beneficiary named in his benefit certificate; and when such regulations are made they become part of the contract, and the right to change can be exercised in no other way." In *Page* v. *Bell,* 146 *Ga.* 680 (92 S. E. 54), the court held that the attempt to change the beneficiary was ineffectual because of noncompliance with the provisions of the by-laws of the association, and that the beneficiary named in the policy was entitled to the proceeds. In *Dell* v. *Varnedoe, 148 Ga.* 91, 94 (95 S. E. 977), the decision makes the distinction between those cases where the controversy is between rival claimants, and the cases where the contest is between one claimant and the insurance company. The Supreme Court said: "As against the association, it must be held that the attempt by the insured to change the beneficiary was ineffectual. . . The association had no interest in the controversy. In its petition it set forth all the facts in so far as it was advised of the facts, and expressed a willingness to pay the money to either of the claimants. The authorities are not in harmony upon the point whether such an association by paying the money into court waives its right to object to the designated beneficiary as ineligible to claim as such; but this court appears to have adopted the rule that the payment of the fund into court with the statement that the company stands

indifferently between the parties is a waiver of all defenses open to it under regulations made solely for its benefit. In such a case, it is said that the equities of the contestants will be compared. . . There are cases in other jurisdictions holding to the contrary; but in the well-considered opinion in *Nally* v. *Nally, 74 Ga.* 669 (58 Am. R. 458), . . based upon principle rather than upon precedent, where the association stood indifferently between the parties, as in this case, this court applied the doctrine of equitable relief as between the claimants to the fund, considering that as done by the insured member which ought to be done." In *Shinholser* v. *Henry,* 151 *Ga.* 238 (106 S. E. 719), it is held that the objection that the beneficiary was ineligible under the by-laws of the association could be raised only by the association. Many other cases to the same effect could be cited.

Most of the decisions cited in behalf of the defendant in error are cases in equity, like *Barrett* v. *Barrett,* where the insurance company waived its right to object to the change of beneficiary, and where no other person had such right. We have found no decision, and able counsel for the defendant in error has cited none, that holds the insurance company is bound by an attempted change of the beneficiary, where the policy required an indorsement by the company of such change on the policy, and where the policy was not sent to the company for such an indorsement, and where the company had not waived that provision of the policy, *and where the company in good faith had theretofore paid the proceeds of the policy to the beneficiary named in the policy.* In this case, the allegation of the petition, that the insurance company "wilfully and wrongfully" paid the proceeds to such beneficiary, is not supported by the statements of *fact* therein. Furthermore, we do not think that the petition, properly construed (most strongly against the pleader), shows that the insured had done *everything reasonably within his power* to obtain the policies and send them to the company. The petition alleges that the insured was ill. It does not state however how long he was sick or how serious was his illness; nor does the petition state why the insured could not have recovered the policies from his wife by bail-trover proceedings, she having no vested interest in the policies, and no right to retain them in her possession over the objections of her husband.

It is our opinion that, under the particular facts of this case as

shown by the petition and its exhibits, the petition failed to set out a cause of action against the insurer, and the court erred in overruling the general demurrer.

*Judgment reversed. MacIntyre and Gardner, JJ., concur.*